# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**GRIMSTONE MINING, LLC,**
**Employer Below, Petitioner**

**FILED**
**June 27, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)  No. 24-ICA-477**          (JCN: 2023007347)

**JAMES CHURCH,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner Grimstone Mining, LLC, ("Grimstone") appeals the October 29, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent James Church timely filed a response.[1] Grimstone did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted a 25% permanent partial disability ("PPD") award, and instead granting an additional 32% PPD award for a total PPD award of 57%.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Church was employed by Grimstone as an equipment operator/truck driver. He filed an Employees' and Physicians' Report of Occupational Injury dated September 24, 2021, which stated that he was injured on September 8, 2021, when he was involved in an accident while driving a tractor-trailer. The physician's portion of the form was completed by Frank Lucente, M.D., at Charleston Area Medical Center. Dr. Lucente indicated that Mr. Church sustained an occupational injury to his neck, ribs, arm, and nose.

On October 13, 2021, the claim administrator issued an order that held the claim compensable for fracture of right C7 transverse process, unspecified displaced fracture of sixth cervical vertebra, unspecified injury at C5 level of cervical spinal cord, and left distal radius fracture.

---

[1] Grimstone is represented by Jane Ann Pancake, Esq. Mr. Church is represented by Gregory S. Prudich, Esq.

1

On October 3, 2022, Prasadarao Mukkamala, M.D., performed an independent medical evaluation ("IME") of Mr. Church. Mr. Church reported diminished coordination and strength in the upper and lower extremities, in addition to pain in the neck and back. Dr. Mukkamala diagnosed a motor vehicle accident resulting in fractures of the ribs on the right 7 through 9, healed with no residual issues, and fracture of the left distal radius, healed. He also noted that Mr. Church had an injury to his neck, which required fixation of C4 and C6-C7 and cervicothoracic decompression and fusion from C2 through T1. Mr. Church also underwent a closed reduction for the left distal radius fracture. According to Dr. Mukkamala, Mr. Church had an incomplete spinal cord injury with quadriparesis. Mr. Church used a walker, and he had impaired coordination, diminished strength, and neck and back pain. Dr Mukkamala indicated that Mr. Church does not require any further treatment, other than periodic follow up, and placed Mr. Church at maximum medical improvement ("MMI"). However, Dr. Mukkamala also noted that Mr. Church was not currently capable of returning to work.

Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), and Rule 20, Dr. Mukkamala determined Mr. Church's impairment rating. With regard to the neck and cervical spine, Dr. Mukkamala opined that Mr. Church had 13% whole person impairment ("WPI") for loss of range of motion, and 14% WPI for the surgery to the cervical spine, which he combined for a total of 25% impairment. Dr. Mukkamala also indicated that Mr. Church had an incomplete spinal cord injury and placed him in the lower end of class II for 10% WPI. Further, Dr. Mukkamala determined that Mr. Church had 10% WPI for upper extremity impairment. Dr. Mukkamala opined that Mr. Church had extensive degenerative changes at the cervical spine that were partly responsible for the extensive surgical procedure and incomplete spinal cord injury. Dr. Mukkamala combined these figures for a total of 40% WPI, 25% of which he apportioned to the compensable injury, and 15% to the pre-existing noncompensable degenerative condition.

On March 10, 2023, Bruce Guberman, M.D., completed an IME of Mr. Church, who reported pain in his cervical spine area three or four days per week, which radiates to the posterior aspect of the head and both shoulders. Mr. Church also reported constant numbness throughout both hands and intermittent numbness in his feet, as well as weakness in both arms and legs. Dr. Guberman's impression was multiple cervical spine fractures with traumatic spinal cord injury with severe compression of the cord C3 through C7 and acute fracture to the cervical spine/osteophyte at C4 and C6-C7, and also transverse process fracture of the 7th cervical vertebrae; history of multiple right-sided rib fractures; and left distal radius fracture; closed reduction.

Dr. Guberman opined that Mr. Church had reached MMI in regard to the compensable injury and indicated that no further treatment was recommended. He noted that Mr. Church could not walk without a walker and was unsteady on his feet. Mr. Church

used a handrail while walking very slowly, and he reported weakness in both hands and arms.

Using the *Guides*, Dr. Guberman stated that Mr. Church had a 25% WPI for the cervical spine, which included impairment for a six-level fusion from C2-T1 and reduced cervical range of motion. Mr. Church also had a 30% WPI for the station and gait impairment from table 13 on page 148 of the *Guides*, for "[p]atient can rise to a standing position and can maintain it with difficulty but cannot walk without assistance." Dr. Guberman found 15% WPI for weakness of both upper extremities pursuant to table 15 on page 148 of the *Guides*. Finally, Dr. Guberman stated that Mr. Church had a 2% WPI for reduced left wrist range of motion. Dr. Guberman combined these impairments for a total of 56% WPI. Dr. Guberman stated that Mr. Church had evidence of preexisting degenerative changes of the cervical spine including calcification of the posterior longitudinal ligament but indicated that there was no history of any prior injuries to the cervical spine, no history of prior symptoms in regard to the cervical spine, and no history of any difficulties in the use of his arms and legs or digital dexterity. As a result, Dr. Guberman did not believe apportionment was appropriate in this case.

Dr. Guberman commented on Dr. Mukkamala's IME. He stated that Dr. Mukkamala overstated Mr. Church's ability to ambulate, did not adequately describe Mr. Church's upper extremity impairment, and apportioned impairment without providing adequate rationale.

Syam Stoll, M.D., completed an IME of Mr. Church on July 13, 2023, at the request of Grimstone. Dr. Stoll's assessment was fracture of right C7 transverse process, unspecified displaced fracture of sixth cervical vertebra, unspecified injury at C5 level of cervical spine, and left distal radius fracture. Dr. Stoll indicated that Mr. Church had reached MMI. Using the *Guides* and Rule 20, he assessed Mr. Church's permanent impairment. Regarding the cervical spine, he placed Mr. Church under Category IV of Table 75 since he had decompression and fusion surgery at levels C2 through T1, for 15% WPI. Additionally, Dr. Stoll assessed 12% WPI for loss of range of motion, which he combined for a total of 25% WPI. Dr. Stoll indicated that Mr. Church had preexisting noncompensable OPLL causing severe spinal canal stenosis posterior to C6-C7, which was aggravated by the injury in this claim resulting in severe spinal canal stenosis and he subsequently underwent decompression and fusion surgery. Dr. Stoll apportioned 10% WPI for preexisting disease and 15% WPI for the cervical spine injury.

Dr. Stoll indicated that he was asked to review Dr. Guberman's report dated March 10, 2023. He opined that Dr. Guberman's impairment formulation was inflated and not an accurate assessment of Mr. Church's impairment. Dr. Stoll stated that Dr. Guberman's 30% impairment for station and gait was based on his subjective assessment, but that PT notes and other medical records revealed that Mr. Church was more functional than Dr. Guberman's assessment. Dr. Stoll also believed that Dr. Guberman's assessment of 15%

WPI for the upper extremities was inflated. Dr. Stoll also disagreed with Dr. Guberman's comments regarding Dr. Mukkamala's report and indicated that apportionment for preexisting disease was necessary in the claim.

Chuan Fang Jin, M.D., examined Mr. Church and issued a report dated July 28, 2023. Dr. Jin noted that Mr. Church ambulated with a walker. Dr. Jin's impression was status post motor vehicle accident with multiple injuries; cervical spine C7 transverse process fracture and C4 and C6-C7 cervical fractures; incomplete spinal cord injury due to prevertebral hematoma with focal tear of the anterior longitudinal ligament at C6, post-traumatic disc edema at C6-C7, and extensive ossification of the posterior longitudinal ligament from C3 through C7-T1, compressing the cord, status post decompression and fusion C2 through C7-T1; left distal radial fracture, healed; and multiple rib fractures, healed.

Using the *Guides* and Rule 20, Dr. Jin assessed Mr. Church's permanent impairment. Regarding the cervical spine, she placed Mr. Church under Category IV D & E of Table 75 for decompression and fusion surgery at levels C2 through T1, which yielded a total of 15% WPI under Table 75. Additionally, Dr. Jin assessed 14% WPI for loss of range of motion, which she combined for 27% WPI. Dr. Jin stated that Mr. Church had preexisting degenerative cervical spine disease, and she apportioned 2% WPI to the degenerative disease and 25% WPI to the compensable injury. Dr. Jin stated that Mr. Church also had an incomplete spinal cord injury and concluded that under Table 13 for station and gait impairment, Mr. Church had 20% WPI. She stated that all of the impairment combined to 40% WPI for the compensable injury. Dr. Jin disagreed with Dr. Guberman's impairment rating of 56% WPI and indicated that it was excessive and inappropriate for him to determine an additional 15% WPI for upper extremity dysfunction due to the spinal cord injury. She also disagreed with Dr. Guberman's finding of 30% WPI for the lower extremity stationary and gait abnormality based on her rationale that more than one table could be referenced.

Dr. Guberman issued a supplemental report dated January 16, 2024. Dr. Guberman reviewed Dr. Jin's report and disagreed with her use of Table 36 of the *Guides*, which is based on gait derangement for lower limb impairments. Dr. Guberman also noted that in Dr. Mukkamala's report, he placed Mr. Church in the category "The patient can rise to a standing position and can walk some distance with difficulty and without assistance but is limited to level surfaces." Dr. Guberman stated that this placement was inconsistent with his own exam, Dr. Jin's exam, and Dr. Mukkamala's exam. Dr. Guberman also disagreed with Dr. Jin's recommendation of no impairment rating for the spinal cord injury involving the upper extremity and indicated that Mr. Church is entitled to an impairment rating from Table 15 on page 148 of the *Guides*. Dr. Guberman indicated that in his own IME he omitted combining the 2% WPI for the left wrist injury with the 56% WPI for the spine and spinal cord injury and stated that his final impairment rating would be 57% WPI.

4

On October 29, 2024, the Board reversed the claim administrator's order, which granted Mr. Church a 25% PPD award, and instead granted him an additional 32% PPD award, for a total PPD award of 57%. The Board found that Dr. Guberman's report was supported by the weight of the medical evidence. It is from this order that Grimstone now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Grimstone argues that the Board was clearly wrong in relying on Dr. Guberman's report because Dr. Guberman failed to consider Mr. Church's preexisting impairment when he did not apportion. Further, Grimstone argues that Dr. Mukkamala correctly determined that apportionment was appropriate based on the diagnostic studies. We disagree.

In Syllabus Point 6 of *Duff v. Kanawha County Commission*, 250 W. Va. 510, 905 S.E.2d 528 (2024), the Supreme Court of Appeals of West Virginia held that:

> Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that the employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

5

Here, the Board reviewed the totality of the medical evidence and concluded that Dr. Guberman's report and findings are supported by objective medical evidence. Further, the Board found that Dr. Guberman's explanation that no permanent impairment should be apportioned because there was no history of any prior injury to the cervical spine, no history of prior symptoms in the cervical spine, and no history of any difficulties in the use of his arms and legs is reasonable and rational and supports the 57% WPI rating. With regard to Dr. Mukkamala's report, the Board concluded that his decision to apportion 15% WPI to a preexisting degenerative condition was not appropriate based on a lack of reasoning and explanation as to the degree of impairment related to the preexisting condition. The Board determined that Dr. Jin's report lacked credibility because she used a section of the *Guides* for rating station and gait that no other evaluator used, and because she opined that Mr. Church was not entitled to a rating for the upper extremity impairment related to the spinal cord injury, which is inconsistent with the other reports of record. We defer to the Board's determinations of credibility and weighing of the evidence. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact, we must defer to the ALJ's credibility determinations and inferences from the evidence. . . .").

Upon review, we conclude that Grimstone has not established that the Board was clearly wrong in granting a 57% PPD award. As the Supreme Court of Appeals of West Virginia has set forth "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in granting Mr. Church an additional 32% PPD award for a total award of 57% PPD based on Dr. Guberman's report.

Based on the foregoing, we affirm the Board's October 29, 2024, order.

Affirmed.

**ISSUED:** June 27, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White